# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| **VITALIZE OFFICIAL,**<br><br>Plaintiff,<br><br>~ *versus* ~<br><br>**THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A**,<br><br>Defendants. | Case No. __1:25-cv-07899__<br><br>**District Judge** Honorable Charles P. Kocoras<br><br>**Magistrate Judge** Keri L. Holleb Hotaling |

## MEMORANDUM OF LAW  *by*
## DEFENDANT LOROC'E *in Support of*
## MOTION TO DISMISS *and to*
## STRIKE PURPORTED SERVICE (ECF 33)

By:     Baruch S. Gottesman, Esq.
        GOTTESMAN LEGAL PLLC
        11 Broadway, Suite 615
        New York, NY 10004
        *Counsel for Defendant LOROC'E*

i

A. **Table of Contents**

B.    **Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

C.    **Introductory Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D.    **Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

E.    **Argument**: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    There is no Jurisdiction Over
    the Moving Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        a.    Service Under Article 10 of
        the Hague Convention
        Does not Permit e-mail Service . . . . . . . . . . . . . . . . . . . . . . . . 2

        b.    Caselaw on e-mail Service in the
        Northern District of Illinois . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        c.    Other Issues with the
        Purported Service of Process . . . . . . . . . . . . . . . . . . . . . . . . . 7

        d.    No Minimum Contacts with Illinois . . . . . . . . . . . . . . . . . . . 10

    II.    There is no Claim Stated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        a.    There is no Trademark Claim . . . . . . . . . . . . . . . . . . . . . . . . 12

            i.    Plaintiff's Mark . . . . . . . . . . . . . . . . . . . . . . . . . 13

            ii.    Defendant's Product . . . . . . . . . . . . . . . . . . . . . 14

            iii.    Similarity of the Marks . . . . . . . . . . . . . . . . . . . 16

        a.    There is no Copyright Claim . . . . . . . . . . . . . . . . . . . . . . . . . 17

    III.    Joinder is Improper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

F.    **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**B.**     <u>Table of Authorities</u>

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................... 12

*Barwin v. Vill. of Oak Park*,
    54 F.4th 443 (7th Cir. 2022) ............................................................................................. 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................... 12

*BP Prods. N. Am. v. Dagra*,
    236 F.R.D. 270, 2006 U.S. Dist. LEXIS 38100 (E.D.Va. 2006) .......................................... 9

*BP Prods.*,
    236 F.R.D. 273 ..................................................................................................................... 9

*CFTC v. Caniff, Case* -,
    2935, 2020 U.S. Dist. LEXIS 33416 (N.D. Ill. Feb. 27, 2020) ............................................ 6

*Chanel, Inc. v. Qi, Case* -,
    0362, 2011 U.S. Dist. LEXIS 157805 (N.D.Cal. Jan. 27, 2011) .......................................... 9

*Expeditee LLC v. The Entities Listed on Exhibit 1, Case* -,
    6440, 2022 WL 1556381 (N.D. Ill. May 17, 2022) ........................................................... 11

*H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*,
    694 F.3d 827 (7th Cir. 2012) .............................................................................................. 5

*Klauber Bros. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A", Case* -,
    10407, 2024 U.S. Dist. LEXIS 8397 (N.D. Ill. Jan. 17, 2024) ............................................ 6

*Langford v. Juárez Cartel, et al.*,
    2020 Case No. 1:20-cv-00132 (D.N.D. 2020) ...................................................................... 8

*Ltd. v. Individuals, et al., Case*,
    2024 U.S. Dist. LEXIS 119991 (N.D. Ill. July 9, 2024) ....................................................... 6

*Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*,
    391 F. Supp. 3d 816 (N.D. Ill. 2019) ................................................................................... 6

*Mwami v. U.S., et al.*,
    Case No. 1:99-cv-00125 ................................................................................. 8

*Palace Skateboards Group v. Aimeey, et al.*,
    2022 Case No. 1:21-cv-3951 (S.D.N.Y. 2022) ...................................... 7

*Parsons v. Shenzen Fest Tech Co., Case -,*
    08506, 2021 U.S. Dist. LEXIS 35903 (N.D.Ill. Feb. 26, 2021) ........................... 5

*Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A", Case -,*
    2965, 2024 U.S.Dist. LEXIS 111501 (N.D.Ill. June 25, 2024) ................................. 2, 6, 10

*PNC Bank Nat'l Ass'n v. Baglien, Case,*
    No. 5:23-cv-113, 2024 U.S. Dist. LEXIS 141302 (2024) ................................... 7

*Popular Enterprises, LLC v. Webcome Media Group, Inc.*,
    225 F.R.D. 560 (E.D.Tenn. 2004) ................................................................. 9

*Purple Innovation, LLC v. Chuang Fan Handicraft Co., Case , 2023 U.S. Dist. LEXIS*,
    75678, 2023 WL 3168485 (D. Utah Apr. 28, 2023) ......................................... 10

*Roadget Bus. PTE Ltd. v. Individuals, Case -,*
    17036, 2024 U.S. Dist. LEXIS 77461 (N.D. Ill. Apr. 29, 2024) ......................... 6

*Roblox Corp. v. Bigfinz, Case,*
    No. 1:23-cv-05346, 2023 U.S. Dist. LEXIS 212147 (N.D. Ill. Nov. 29, 2023) ................. 11

*Rubik's Brand, Ltd. v. P'ships & Unincorporated Ass'n Identified on Schedule A, -,*
    5338, 2021 U.S. Dist. LEXIS 40755 (N.D. Ill. Mar. 4, 2021) ........................... 11

*Strabala v. Zhang*,
    318 F.R.D. 81 (N.D. Ill. 2016) ................................................................. 10

*Tiffany (NJ), LLC v. Dongping, Case -,*
    61214, 2010 U.S. Dist. LEXIS 148013 (S.D. Fla. July 20, 2010) ....................... 9

*Water Splash, Inc. v. Menon*,
    137 S. Ct. 1504; 581 U.S. 271 (2017) ......................................................... 3, 4

iv

**Federal Statutes**

Title 28 U.S.C. § 1608 ................................................................................................. 4

**Other Authorities**

https://www.hcch.net/en/instruments/conventions/status-
    table/notifications/?csid=393&disp=resdn ........................................................... 3

http://amazon.com/report/infringement ....................................................................... 1

https://brandportal.walmart.com/ ................................................................................ 1

https://tsdr.uspto.gov/documentviewer?caseId=sn98705755&docId=APP20240819212834& .. 14

https://tsdr.uspto.gov/documentviewer?caseId=sn98705755&docId=DRW20240819212834&  14

https://tsdr.uspto.gov/documentviewer?caseId=sn98705755&docId=ROA20250322062447&l
    inkId=9#docIndex=8&page=1 ............................................................................ 14

### C.    Introduction and Factual Background

Moving Defendant LOROC'E ("Moving Defendant" or Defendant") respectfully moves to Dismiss the Complaint for lack of jurisdiction, for failure to state a claim and for misjoinder, as more fully elucidated below.  In addition, and consistent with the argument that the purported service of process was invalid pursuant to the Hague Convention, the Defendant respectfully seeks to Strike the purported Service of Process (ECF 33).

Given that much of the record remains under Seal, we respectfully reserve the right to respond in the Reply to any new factual material that the Plaintiff may further submit in opposition to this Motion.  The Moving Defendant remains available to supplement this briefing or elaborate at oral argument if so directed by the Honorable Court.

### D.    Procedural Background

As with many so-called "Schedule A" cases, the Plaintiff bypassed the DMCA system and well-oiled machinery of Amazon and Walmart's intellectual property enforcement program,  *See,*  http://amazon.com/report/infringement  and  https://brandportal.walmart.com/ipservices, to file a trawling Complaint that makes vague, generalized allegations against hundreds of unidentified parties.  The Moving Defendant has no idea why they were joined in this suit other than the vague allegations in the Complaint about the Defendants being "owned and/or operated by the same individuals and/or entities", Complaint ¶ 4; with a promise that if and when the same owners are identified the joinder will be retroactively deemed appropriate (even in the absence of any basis for joinder at this time), See Complaint at ¶ 6 and 7.

There is nothing in the Complaint or in the public record that names any action (or failure to act) by Defendant or their alleged role in this sprawling conspiracy.  There is nothing in the Complaint or the public record that shows any purported similarity between the products sold

on Defendant's store and those of the other Defendants. There is nothing in the Complaint that establishes any basis to bring this suit in Illinois against the Defendant.

After imbricating itself in a lawsuit against these hundreds of Defendants (186 by the Undersigns' count), the Plaintiff sought and obtained leave to serve the Defendants in China (ECF 9) and purported to serve the Defendant by e-mail (ECF 33).

The Parties consented to an extension for the Defendant to respond through October 27, 2025, and the Defendant now appears to Dismiss the Complaint, to Strike the purported Service of Process and for other Relief.

**E.      Argument**

      **I.      There is No Jurisdiction over the Moving Defendant**

            **a.      Service under Article 10**
                    **of the Hague Convention**
                    **Does not Permit e-mail Service**

The Moving Defendant admits that the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (Hague Convention), arts 15-16, 20 U.S.T. 361 (Nov. 15, 1965) applies to service on the Defendants, and argues that e-mail service is not prohibited by the Convention, *See generally* EX PARTE MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ALTERNATIVE SERVICE, at pp. 8-9 (ECF 20).

The Defendant agrees on this point. While the paperwork submitted in support of the Motion for a Temporary Restraining Order (ECF 18) remains under seal, to the extent it displays the Defendants' store on Amazon it will show the name and address of the Moving Defendant, which was possible to obtain with reasonable diligence, *See generally, Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, Case

No. 23-cv-2965, 2024 U.S.Dist. LEXIS 111501, **19-22 (N.D.Ill. June 25, 2024)(Pallmeyer, Chief District Judge Rebecca R.)(Hague Convention applies to "Schedule A" Defendant where there is at least one known address).

The Defendant also agrees with the Plaintiff that Article 10 of the Hague Convention disclaims any interference with "the freedom to send judicial documents, by postal channels, direct to persons abroad".  In entering into the Convention, China declared that it opposes to the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention.  See the Declarations of the People's Republic of China translated into English and maintained by the Convention Depositary https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn, a copy of which is annexed as Exhibit A.

Before getting into the caselaw on this topic, two important points:

First - We recognize that it has been the widespread (but not universal) practice of Courts in the Northern District of Illinois to permit e-mail service on China-based Defendants. We respectfully submit that this argument that e-mail is invalid and the purported Service of Process should be Stricken is made to preserve the argument for appeal (the Seventh Circuit has not directly addressed the issue) and as a good faith argument to extend, modify, or reverse the law on this issue, which itself remains in flux.

Second – Article 10, we submit, was the only basis to serve overseas by mail or otherwise expand the options for service internationally.  And that expansion *did not* include e-mail.

The fact that the Convention enabled mail is plain from the Supreme Court's decision in *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504, 581 U.S. 271 (2017).  Justice Alito wrote

for a unanimous court about the history of the Hague Convention incorporating Secretary Rusk's report confirmed that "Article 10 permits direct service by mail . . . unless [the receiving] state objects to such service." *Water Splash*, 137 S.Ct. at 1511-12.

The Defendant submits that absent the provisions of Article X of the Hague Convention, mail would not be permitted for international service. And that rule should apply to e-mail, which was not authorized under the Convention.

To be clear, Article 10 was not agreed to in some long-ago era, deep in the mists of time and history, by quill-tipped drafters who were only familiar with personal service and the use of postal channels. In and since the 1960s, there have been functional telefax services, telegrams, telex, and any other number of other pre-internet virtual technologies. Many of these technologies contained safeguards that could guarantee the actual delivery of a Summons to a Defendant, more so than e-mail. It did not seem to occur – at least as we can tell from the caselaw – that the Hague Convention and the challenges of international comity would authorize wholesale permission for U.S. Plaintiffs to serve process by virtual means without having to go through the traditional processes for service of process under U.S. law or the strictures of the Convention.

We submit that under the Supreme Court's interpretation of Article 10, there is simply no authority under the Hague Convention for overseas service via e-mail.

And that's consistent with how service works in other international contexts. For example, service under 28 U.S.C. §1608 (authorizing service by mail on Defendant sovereigns) or service under State laws authorizing services, such as New York Civil Practice Laws and Rules § 312-A explicitly require statutory authority for postal service. But neither those statutes – nor the rules that apply here – have ever authorized e-mail service internationally.

In other words, we submit that the Convention creates and (for those Countries that don't object) doesn't *interfere* with the right of service by postal channels, if they otherwise exist. But the Convention does not magically authorize all methods or otherwise lower the standards for service or authorize a completely different regime for Defendants overseas.

The Seventh Circuit has raised the idea that the rules should be bent with overseas Defendants in the context of preliminary injunctions "because formal service of process under the Hague Convention or other provisions of law can take months", *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012). But respectfully, that concern is illusory. The Convention expressly provides that while a default judgment against a party served pursuant to the Hague Convention cannot issue for six months after service, it explains that "the judge may order, in case of urgency, any provisional or protective measures."

Therefore, we respectfully submit that nothing in the Hague Convention, nor the widespread adoption (and ease) of service by e-mail, nor concerns about preliminary injunctions can serve as a permission slip to throw away the entire idea of service of process. Providing due process to Defendants may be difficult, but if the Plaintiff intends to take advantage of the Federal Court system to enforce its rights, respecting those rights must be paramount.

With that review of the Conventional text on the issue, we turn to the caselaw, which is not as clearcut as the Plaintiff would have us believe.

### b. Caselaw on e-mail Service In the Northern District of Illinois

Some Judges in this District have held that e-mail service on Defendants in China is inconsistent with the Hague Convention and Due Process requirements, *See Parsons v. Shenzen Fest Tech Co.*, Case No. 18-cv-08506, 2021 U.S. Dist. LEXIS 35903, *10 (N.D.Ill. Feb. 26,

2021)(Jensen, J.)(e-mail service only potentially appropriate if attempt to serve through the Hague Convention unsuccessful, and even then e-mail service would be inconsistent with due process clause); *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 825-26 (N.D. Ill. 2019)(Gottschall, J.)(finding e-mail inconsistent with the Hague Convention); *CFTC v. Caniff*, Case No. 19-cv-2935, 2020 U.S. Dist. LEXIS 33416, *16 (N.D. Ill. Feb. 27, 2020)(Dow, J.)(e-mail service authorized because receiving state – unlike China – did not object to Article 10's postal channels service. Implying China's Article 10 objection included e-mail.)

Other Judges disagree, *See Peanuts Worldwide LLC v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 23-cv-2965, 2024 U.S. Dist. LEXIS 111501, **26-27 (N.D. Ill. June 25, 2024)(Pallmeyer, J.)(finding e-mail service sufficient); *Roadget Bus. PTE Ltd. v. Individuals*, Case No. 23-cv-17036, 2024 U.S. Dist. LEXIS 77461, *14 (N.D. Ill. Apr. 29, 2024)(Ellis, J.); *Klauber Bros. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, Case No. 23-cv-10407, 2024 U.S. Dist. LEXIS 8397, *1 (N.D. Ill. Jan. 17, 2024)(Durkin, J.)(e-mail service on Defendants in China consistent with Hague Convention).

We would note that then-Chief Judge Pallmeyer noted: "it is hardly fair for a Schedule A litigant's chances rise or fall based on the identity of the judge to which that entity's case is assigned." and calling for direction from Seventh Circuit, *Peanuts Worldwide LLC*, 2024 U.S. Dist. LEXIS 111501, * 26-27. *See also Roadget Bus. Pte.. Ltd. v. Individuals, et al.*, Case No. 24-cv-607, 2024 U.S. Dist. LEXIS 119991, at *36 n.13 (N.D. Ill. July 9, 2024)(a "ruling [by the Seventh Circuit] on electronic service of process – whether in this case or another case – would help future litigants avoid substantial confusion".)

But in any event, where the pleadings show that the Defendants' addresses were available, even under *Roadget Bus. PTE. Ltd.*, the Plaintiff is required to comply with the service requirements of the Hague Convention.

We would respectfully suggest that where the address is known, the weight of authority in this District and emerging consensus nationally supports a finding that wholesale authorization of e-mail was inconsistent with the Hague Convention, *See PNC Bank Nat'l Ass'n v. Baglien*, Case No. 5:23-cv-113, 2024 U.S. Dist. LEXIS 141302, at *4-5, and n. 4 (S.D. Tex. Aug. 1, 2024)(collecting cases nationally and identifying an emerging consensus against approval of e-mail service). This is also consistent with the opinion of Professor Benjamin Liebman of Columbia Law School in a related Amici Curiae brief filed in an analogous case, *See* Brief of Amici in *Palace Skateboards Group v. Aimeey, et al.*, Case No. 1:21-cv-3951 (S.D.N.Y. June 7, 2022)(ECF 48). A copy of the Brief is annexed as **Exhibit B** with the SDNY PACER headers stripped so that the header is usable and not garbled with the N.D.Ill. PACER header.

For the reasons, we respectfully submit that service was not perfected on the Moving Defendant. For that reason, the purported return of service should be Struck and the case should be dismissed because there is no jurisdiction over Loroc'e and the purported Service of Process should be Stricken from the docket.

### c. Other Issues with the Purported Service of Process

The Moving Defendant respectfully submits that even if alternative service through e-mail was valid, there are still due process protections that should have been enacted to ensure the Defendant proper Notice and was otherwise provided their due process protections.

7

A key point is that to comport with the standards for due process, the Hague Convention requires translations. We submit that even assuming alternative service is valid by e-mail, it should require local language translation, and should require more than one attempt. And the Affidavit of Service by e-mail should contain a confirmation of Receipt or at least confirmation of no bounceback.

Again, the Defendant recognizes that those Judges who have permitted e-mail service on Defendants in China in Schedule A cases have not required these protections. The argument is made here to preserve the Defendant's rights on appeal and as a good faith argument for the extension, modification and/or reversal on the current "law" (to the extent there is any purported consensus on this issue) on e-mail service.

When approving alternative service on Osama bin Laden and Al Qaeda for their alleged role in the United States Embassy Compound attack in Nairobi Kenya, the District Court authorized service by publication in "the Washington Law Reporter, The International Herald Tribune, and Al-Quds Al-Arabi (in Arabic) for six weeks". Order of District Judge Colleen Kollar-Kotelly, *Mwami v. U.S., et al.*, Case No. 1:99-cv-00125, D.E. 23 (D.D.C. Aug. 2, 1999). When victims sought relief against alleged cartels in Mexico, the Court authorized service by "publi[cation of] a Spanish-language notice of this lawsuit in one national newspaper of general circulation in Mexico once a week for six consecutive weeks . . ." Order of Magistrate Judge Clare R. Hochhalter, *Langford v. Juárez Cartel, et al.*, Case No. 1:20-cv-00132 (D.N.D. Oct. 28, 2020).

However profound the alleged wrongs of the Defendant in this case, surely Defendants are entitled to same level of due process and basic procedural safeguards provided to cartels and violent international outlaws that include a local language translation and multiple publications.

Defendant respectfully submits that the cases which have not required English translations are the exceptions that prove the rule. For example, in *BP Prods. N. Am. v. Dagra*, 236 F.R.D. 270, 2006 U.S. Dist. LEXIS 38100 (E.D.Va. 2006) the District Judge authorized alternative service on a Pakistan-based Defendant only after extensive efforts were made to locate the Defendant and two attempts under the Hague Convention failed. The Judge considered and then expressly declined to require an Urdu translation only after the Judge made *specific* findings about *the specific Defendant's* proficiency in English and the Defendant's operation of a multi-million dollar business in the United States, *See BP Prods.*, 236 F.R.D. at 273-274. And even *BP Prods.* required the ad to run once a week for four weeks.

Further, given the likelihood that an e-mail sent from the United States with a link to a foreign language website (potentially prohibited under the "Great Firewall", as the Undersigned has learned in other cases, although the Undersigned does not know the publication website in this case and therefore cannot test China-based access to the website) or the recipients' e-mail filter, the Plaintiff should at the very least confirm that the e-mailed Service was not rejected, sent six times in the style of newspaper publication, and should provide such confirmation in their Affidavit of Service.

In *Chanel, Inc. v. Qi*, Case No. 11-cv-0362, 2011 U.S. Dist. LEXIS 157805 (N.D.Cal. Jan. 27, 2011), the Court allowed service of process by e-mail on an alleged Chinese infringer *only after* "The e-mail did not bounced *[sic]* back nor was it returned as 'undeliverable,' thereby demonstrating the e-mail was delivered and the e-mail address is valid and operational." *Chanel* at *8, *citing Popular Enterprises, LLC v. Webcome Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D.Tenn. 2004). *See also Tiffany (NJ), LLC v. Dongping*, Case No. 10-cv-61214, 2010 U.S. Dist. LEXIS 148013, at *3 (S.D. Fla. July 20, 2010)(requiring a showing that the e-mails were

valid and operational before allowing them to be used for alternative service). Cases in this District note that when Plaintiffs "served [Defendant] by e-mail and received no 'bounce back'" *Strabala v. Zhang*, 318 F.R.D. 81, 109 (N.D. Ill. 2016).[1]

This is not asking for the sky and the moon. *See, e.g.*, *Purple Innovation, LLC v. Chuang Fan Handicraft Co.*, Case No. 2:22-cv-620, 2023 U.S. Dist. LEXIS 75678, 2023 WL 3168485 (D. Utah Apr. 28, 2023) in which the Court allowed for alternative service but required an individual Summons to each individual Defendant by e-mail six times (consistent with how service by publication often require six (6) printings over a number of weeks to confirm the recipient's receipt) and to provide proof of service to the Court with confirmation that there was no bounceback.[2]

For these reasons the Plaintiff submits that the Moving Defendant has not been properly served with process and since there is no personal jurisdiction over the Moving Defendant, the Complaint should be dismissed.

### d. No Minimum Contacts with Illinois

As noted, the paperwork submitted by the Plaintiff in support of the TRO remains under seal. But as far as the Moving Defendant knows, based on the allegations in the Complaint (and based on past experience in terms of what is included in the Exhibits to the TRO), there is no allegation that the Moving Defendant *ever* sold product in Illinois. We do not even know whether

---

[1]     *See also Peanuts Worldwide LLC*, 2024 U.S. Dist. LEXIS 111501, *15 (describing the bounce back requirement as being on "slightly more solid footing" and noticing that "[i]t would have been better practice for Plaintiff's counsel to do so.") In the interest of full disclosure, Judge Pallmeyer ultimately rejected the Undersigned's argument that proof of no bounce-back should be required, even as they recognized it would be best practice.

[2]     And again, in the interest of transparency, we would note that this argument was rejected by the Court in *Peanuts* and *Klauber*.

there was a so-called "test sale" (strawman purchase by a Plaintiff, often used to artificially create jurisdiction in a State).

This Honorable Court has rejected the idea that when a Plaintiff merely alleges that an overseas Defendant "maintain[s] an interactive website, unaccompanied by evidence of any sales or other activity targeting Illinois" could establish jurisdiction over a China-based Defendant in a Schedule A case, *See Expeditee LLC v. The Entities Listed on Exhibit 1*, Case No. 21-cv-6440, 2022 WL 1556381, at *4 (N.D. Ill. May 17, 2022) (N.D.Ill. May 17, 2022) *quoting Rubik's Brand, Ltd. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20-cv-5338, 2021 U.S. Dist. LEXIS 40755, at *4 (N.D. Ill. Mar. 4, 2021). 2021 WL 825668, at *4. *See also Roblox Corp. v. Bigfinz*, Case No. 1:23-cv-05346, 2023 U.S. Dist. LEXIS 212147, at *1-2 (N.D. Ill. Nov. 29, 2023)(collecting cases that decline to find minimum contacts by the mere maintenance of a website that could potentially be accessed from Illinois).

There is nothing in the record – at least the public record – that alleges *any* sales in Illinois. And even if there were some *de minimus* sale in this State it would not justify personal jurisdiction over the China-based Defendant by a California Corporation.

Simply put, this case belongs in China or Nevada (where Plaintiff appears to based according to public information on the internet, although notably the Complaint does not identify the legal structure, corporate law or location of the Plaintiff), or Washington State. But there is no basis for this case to be here in Illinois.

For these reasons the Defendant respectfully submits that there is no personal jurisdiction over them in this Court, the Complaint should be dismissed.

11

## II.     There is no Claim Stated

Recognizing the unwieldy nature of this lawsuit against hundreds of overseas Defendants, and the difficulty of "plead[ing] factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Barwin v. Vill. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) the Complaint avoids the specifics of the any Defendant's wrongdoing by making broad claims about national seizure statistics and the alleged misbehavior of various platforms, *See* Complaint ¶ 24 and the footnote there, which references a 2020 Report by the U.S. Trade Representative, together with a mish-mash of other allegations about the industry in general.

This background may be interesting, but irrelevant to any *specific* Defendant and the *specific* Causes of Action plead against *a specific* Defendant.  One searches in vain through the Complaint for an allegation of an action by the Defendant (or any other Defendant) about any condition of mind, the Defendant's alleged infringement, or any other activity that would justify this cause of action or their Joinder in one action.

### a.     <u>There is no Trademark Claim</u>

Respectfully reserving the right to supplement this argument, should the Plaintiff make out any further allegation of infringement, the Defendant – working with both hands tied behind their back because even assuming the supplemental information submitted in support of the Motion for a TRO is admissible for purposes of assessing the Complaint under Rule 8 and Rule 12(b) – will show that substantively there is no argument or fact that can support allegations of infringement.

i.      Plaintiff's Mark

In separate complaint submitted directly to Amazon, the Plaintiff claimed to own

United States Patent and Trademark Office (USPTO) under Registration No. 7,848,091.  We will

assume that is the basis for the claim in this Complaint.

That mark is described by the USPTO as follows:

> "The mark consists of a three-dimensional configuration of a pouch
> being packaged for a drink mix. At the stop [*sic*] of the package is a
> single straight band above eight sections separated by seven wavy
> lines.   The broken lines depicting the outline of the packaging
> indicate placement of the mark on the packaging and are not claimed
> as features of the mark."

USPTO Registration Certificate No. 7,848.091 (Copy at Exhibit C)

The Registration includes the following picture:



This illustration is based on the Drawing submitted as part of Complainant's

USPTO application (Aug. 19, 2024) (a copy of which is annexed as Exhibit D and available online

13

at   https://tsdr.uspto.gov/documentviewer?caseId=sn98705755&docId=DRW20240819212834&

linkId=14#docIndex=13&page=1)

Of particular importance, in their U.S.P.T.O. application, the Complainant stated

that: "[t]he applicant **is not claiming color as a** feature of the mark."  Application dated August

19, 2024 (emphasis added).  A copy of the application is annexed as Exhibit C and available online

at   https://tsdr.uspto.gov/documentviewer?caseId=sn98705755&docId=APP20240819212834&

linkId=15#docIndex=14&page=1   This lack of any color claim remained consistent through the

Complainant's response to the USPTO Office Action where the Complainant stated: "**Color is not**

**claimed as a feature** of the Mark".  See Response to Office Action (March 21, 2025)(emphasis

added)  a   copy   of   which   is   annexed   as   Exhibit   E   and   available   online   at

https://tsdr.uspto.gov/documentviewer?caseId=sn98705755&docId=ROA20250322062447&link

Id=9#docIndex=8&page=1

ii.     Defendant's Product

The Respondent is alleged to have sold a product that looked as follows:



Picture of the Respondent's packaging.

The Respondent's packaging does not infringe the Complainant's design mark. The Respondent's packaging is modeled on the Himalayas, specifically it was independently designed based on the following photograph:

喜马拉雅山



and the strong association of rural central Asia with "calmness" in Chinese visual culture.

This graphic shown in the Respondent's product is rendered in a different artistic style, with shading and color gradients – coloring being its strongest element – with a shape and design entirely distinct from the trademark asserted by the Complainant.

Most importantly, the packaging prominently displays the brand name "Loroc'e" (which is also the store name) and "ULTRACALM" above the graphic, in a large, stylized font. "ULTRACALM" conveys the meaning of calmness and relaxation and serves as the product's key descriptive term. This is consistent with a beverage that contains magnesium, whose primary function is to promote calmness and relaxation.

15

### iii. Similarity of the Marks

Without prejudice to the argument that the Mark itself is indistinct as a 3-d graphic and reserving the right to supplement this argument if the Plaintiff were to actually lay out their claim, the Respondent respectfully submits that the Mark and the Respondent's products are not similar.

**Appearance**: The Defendant's Mark is a minimalistic, monochrome line drawing of a specific mountain range, modeled on a particular image. It is based on "bands" with no associated color, but rather the specific shape of mountains. In contrast, the claimed Trademark is based on specific non-colored shaded bands of a distinct silhouette that does not resemble the accused product in either shape or "number" (recalling that the claimed Mark was specific about the number of horizontal bands).

**Overall Commercial Impression**: The presence of the strong, distinctive word mark "Loroc'e" on the Accused Product is a key differentiator. A typical Amazon consumer will search for and identify products primarily by their brand *names*. The name "Loroc'e" is the dominant feature of the packaging, immediately signaling the product's source. The mountains silhouette on the Accused Product functions as a secondary, ornamental element within a larger, branded trade dress. The overall impression of the Accused Product is that of a "Loroc'e" brand product, not a product associated with the owner of the Asserted Mark based on the existence of a sillouhette in one of its ornamental designs.

**Strength of the Asserted Mark** – Banding (even if interpreted as a mountain range) is a common, suggestive, or descriptive motif for products intended to evoke concepts of nature, calm and purity. As such, a mountain silhouette (let alone the seven uncolored horizontal bands claimed by the Plaintiff) cannot be inherently distinctive. We respectfully submit that as a

relatively weak mark, its scope of protection would be narrow and (assuming the Trademark is upheld as valid) would be enforceable only against marks that are identical or confusingly similar to the specific claimed design.

The Complaint does not and cannot claim a monopoly over all uses of mountain imagery on packaging, and therefore the Trademark claim must be dismissed with prejudice.

And surely the Plaintiff is not claiming ownership of all uses of the word "calm" in marketing of health foods used for relaxation purposes, as evidenced by the Plaintiff's failure to make that claim to Amazon and have presumably abandoned the argument.

Since there has been no trademark infringement, to the extent that the Complaint alleges trademark infringement, it should be dismissed with prejudice.

ii.     **There is no Copyright Claim**

Here is a side-by-side of the Plaintiff's alleged Copyright (right) and the Defendant's product (left)




Similar to the Trademark issue, the *Scène à faire* of colored banding that may evoke mountains, especially in the context of the strongest element of the design – the name of the brand that users would search (Nello v. Loroc'e), but they cannot be protectable for designs that use those same basic visual elements.

Again, the Defendant respectfully reserves the right to supplement this argument if and when the Plaintiff may identify their factual and legal basis to claim infringement.

### III.    Joinder is Improper

The Complaint rehearses standard language to establish joinder of all Defendants in this case, See Complaint ¶¶ 5-7.

But the unique facts of this case require dismissal for misjoinder.

**First** – the Complaint alleges that the basis for joinder is the Plaintiff's experience that "a significant number of Seller Aliases included in Schedule A are owned and/or operated by the same individuals and/or entities", Complaint at ¶ 6.

Assuming the validity of that factual claim (which is contradicted by the public record in that Amazon.com identifies the true seller for each store) the Plaintiff has now had the required information for months.  The Plaintiff has failed to identify such overlap.  Having not elected to Amend the Complaint to show such overlap (as promised if they identify any overlap), the Plaintiff has no factual basis to maintain this fiction that the Defendants are properly in the same lawsuit.

Second – the allegations in this Complaint as it relates to the Moving Defendant address one particular product.  A product that has the Defendant's Mark listed on the product. There is no evidence that any of the co-Defendants were selling the same product as the Defendant.

Simply put the facts *of this case* as it applies to the Moving Defendant belie any factual basis to establish joinder.

Again, given the procedural posture of this case, the Defendant respectfully reserves the right to supplement this argument should the Plaintiff submit any further evidence to establish joinder.

Because the Moving Defendant was misjoined in this case, they should be dismissed from the case.

*[Remainder of Page Intentionally Left Blank]*

### E. Conclusion

For these reasons we respectfully submit that this Honorable Court should dismiss the Complaint because there is no jurisdiction over the Defendant, and, in the alternative, it should be dismissed with prejudice because the Complaint fails to state a cause of action against the Moving Defendant. Further, purported Summons against the Defendant should be Stricken.

Additionally and in the alternative, were the Court to find that there is jurisdiction and that a cause of action is alleged against the Defendant, the Defendant should be dismissed for misjoinder.

All Exhibits are from the public record and subject to judicial notice, and they are complete true and accurate copies of their originals except as otherwise noted.

DATED: **OCTOBER 22, 2024**

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 20, 2025, simultaneous with the filing of this Submission, a copy of this submission was served on the Docket using the CM/ECF system and a courtesy copy to the e-mail of all Appearing Parties.

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.